FILED
2024 Jul-01  PM 04:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

ELECTRONICALLY FILED
5/20/2024 2:56 PM
01-CV-2024-902033.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

|  |  |
|---|---|
| **JAMES ANTHONY ZYNDA;** | **MDL NO. 2873** |
| **JOSE L. LOPEZ;** | |
| **GUADALUPE  LOPEZ IV;** | **Civil Action No:_____** |
| **DAWN  MAKO;** | |
| **BILAL A. MALIK;** | **JUDGE RICHARD GERGEL** |
| **GEORGE  MARSH III;** | |
| **HOSIE  MATTOX JR;** | **AMENDED COMPLAINT AND** |
| **AMBROSE  MCALLISTER;** | **JURY DEMAND** |
| **EDDIE  MCCORKLE;** | |
| **JAMES  MCCUNE;** | |
| **MIKE  MCFARLAND;** | |
| **DEWEY  MCKEE;** | |
| **HAROLD  MCLEOD JR;** | |
| **DELOIS  MEADE;** | |
| **WILLIAM  MEADORS;** | |
| **LINDA  MEARS;** | |
| **ISAIAS  MENDOZA;** | |
| **ROBERT  BERGQUIST;** | |
| **DANNY MILLS;** | |
| **ROBERT  MINCEY;** | |
| **ALFREDO  MIRANDA ;** | |
| **KARIME LOURDES MORENO;** | |
| **MICHAEL  MUELLING;** | |
| **BROCK  MULDER;** | |
| **JOHNNIE  MULLINS;** | |
| **RYAN  NADER;** | |
| **JOHN  NEFF;** | |
| **RONALD  NESBIT;** | |
| **RICKY  NEVEILS;** | |
| **GENEVA  NEWSOME;** | |
| **NIKITAS  NICHOLAIDES;** | |
| **DAVID Q NOEL;** | |
| **JAMES  NORMAN;** | |
| **MARK  OBAR;** | |
| **PATRICK  O'HAGAN;** | |
| **TRAVIS  OPTENBERG;** | |
| **DAVID  OZBUN;** | |
| **FILIPPO  PALUMBO;** | |
| **JAMES  PARKER;** | |
| **HARLAN  PARR;** | |
| **PAUL  PATE;** | |
| **TERESA  PEREA-ESPINOSA;** | |
| **ROBERT A. PETERSON;** | |
| **TERRY  PICKETT;** | |

1

**ROBERT PIXLEY;**
**RONALD POSERINA;**
**RAY PRICE;**
**GEORGE O. PRICHETT;**
**DANIEL PUDIL;**
**JULANA RAY;**
**LOUIS R RAY;**
**TOMMIE REESE;**
**JEFFERY REISDORPH;**
**KENNETH E RENTSCHLER;**
**BRADLEY REYNOLDS;**
**JAMES RICHARDS;**
**PAUL RIDDER;**
**SERGIO TORTORIELLO RIVERA;**
**ANGEL RIVERA;**
**DAVID RIVERA;**
**LAURIE ROBERTS;**
**RICHARD ROBINETTE;**
**TYRONE ROBINSON;**
**MICHAEL ROJO;**
**DAVID ROMERO;**
**RAMON ROSA;**
**WESLEY W. ROSEBERRY;**
**DANIEL ROSS;**
**DANIEL RUBIO;**
**GORDON L. RUSH;**
**DAVID SANDERS;**
**DAVID SANTOS;**
**TONYA SCOTT;**
**CHRISTINE SEWELL;**
**WILLIAM SHAPIRO;**
**PARKER SHELATO;**
**RYAN JAY SHEVLIN;**
**GWENDOLYN SIMMONS;**
**TIMOTHY H. SINEX;**
**ROBERT SINGLEY;**
**DAVID M SISCHO;**
**SHARON SIZER;**
**JEROL SMITH;**
**MARK WAYNE SMITH;**
**JEFFERY SMITH;**
**SIDNEY SMITH;**
**FRANK TYRONE SMITH;**
**FELIX SOLANO;**
**JOHN WAYNE SPENCER;**
**EDWARD STEWART;**
**MARK CARROLL STEWART;**
**GARTH STOCKARD;**
**PATRICK CLAUDE STOFFAL;**
**DARLEEN STOWELL;**

2

**JAMES  SULLIVAN;**
**KENNETH  SWINEHART;**
**JAMES EDWARD TAYLOR;**
**JUSTIN  TENNANT;**
**KYREN  TENNESON;**
**ROBERT  THATCHER;**
**JAMES  THOMAS;**
**TANDY  THOMAS;**
**HALLIE  TRAVIS;**
**WARREN  TRAWICK;**
**JOANNE  TUTEN;**
**TODD  VAN KLEECK;**
**DAVID  VINCENT;**
**KENNETH  WALKER;**
**CHRISTOPHER  WALKER;**
**MELISSA  WARD;**
**ROBERT  WEAVER;**
**THOMAS  WEBBER;**
**EDITH  WEIPERT;**
**DEBRA  WELCH;**
**STEPHEN J. WHITE;**
**TALIAFERRO  WIATT;**
**BARRY  WILEY;**
**ANTHONY A WILLIAMS;**
**ANDREW  WILSON;**
**EDDIE  WIMBLEY;**
**JOHN  WINDHAM;**
**DONALD  WOLF;**
**ANTHONY  WRIGHT;**
**ROBERT  ZIRKLE;**
**DIMITRA ZOUPAS,**

                **Plaintiffs,**

**v.**

**3M COMPANY (f/k/a Minnesota**
**Mining and Manufacturing Company);**
**AGC CHEMICALS AMERICAS INC.;**
**AMEREX CORPORATION;**
**ARCHROMA U.S. INC.;**
**ARKEMA, INC.;**
**BASF CORPORATION**
**BUCKEYE FIRE EQUIPMENT**
**COMPANY;**
**CARRIER GLOBAL CORPORATION;**
**CHEMDESIGN PRODUCTS, INC.;**
**CHEMGUARD, INC.;**
**CHEMICALS, INC.;**
**CHEMOURS COMPANY FC, LLC;**

**CHUBB FIRE, LTD;**
**CLARIANT CORP.;**
**CORTEVA, INC.;**
**DAIKIN AMERICA, INC.;**
**DEEPWATER CHEMICALS, INC.;**
**DU PONT DE NEMOURS INC. (f/k/a**
**DOWDUPONT INC.);**
**DYNAX CORPORATION;**
**E.I. DU PONT DE NEMOURS AND**
**COMPANY;**
**JOHNSON CONTROLS, INC.;**
**KIDDE PLC;**
**NATION FORD CHEMICAL**
**COMPANY;**
**NATIONAL FOAM, INC.;**
**PERIMETER SOLUTIONS, LP;**
**THE CHEMOURS COMPANY;**
**TYCO  FIRE PRODUCTS LP, as**
**successor-in-interest to The Ansul Company;**
**UNITED TECHNOLOGIES**
**CORPORATION;**
**UTC FIRE &   SECURITY AMERICAS**
**CORPORATION, INC. (f/k/a GE**
**Interlogix, Inc.),**

                    **Defendants.**

## COMPLAINT

COMES NOW, the Plaintiff, by and through undersigned counsel, and alleges upon information and belief as follows:

## INTRODUCTION

1.      Plaintiffs bring this action for damages for personal injury resulting from exposure to the toxic chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS includes, but is not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

2.      Defendants collectively designed, marketed, developed, manufactured, distributed, released, promoted, sold, and/or otherwise inappropriately disposed of PFAS chemicals with

knowledge that it was highly toxic and bio persistent, which would expose plaintiffs to the risks associated with PFAS.

3.      PFAS binds to proteins in the blood of humans exposed to the material and remains and persists over long periods of time. Due to their unique chemical structure, PFAS accumulates in the blood and body of exposed individuals.

4.      PFAS are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, that PFAS remain in the human body while presenting significant health risks to humans.

5.      Plaintiffs were unaware of the dangerous PFAS in their drinking water and unaware of the toxic nature of the Defendants' PFAS in general. Plaintiffs' consumption of PFAS from Defendants' contamination and inappropriate disposal caused Plaintiffs to develop the serious medical conditions and complications alleged herein.

6.      Through this action, Plaintiffs seek to recover compensatory and punitive damages arising out of the permanent and significant damages sustained as a direct result of exposure to Defendants' PFAS at various locations. Plaintiffs further seek injunctive, equitable, and declaratory relief arising from the same.

## JURISIDICTION AND VENUE

7.      The Defendants are subject to the jurisdiction of this Court on the grounds that (a) one or more of the Defendants is a foreign corporation whose principal place of business is located in the State of Alabama; (b) one or more of the Defendants are foreign corporations that either are registered to conduct business in the State of Alabama and have actually transacted business in Alabama; and/or (c) one or more of the Defendants is a domestic corporation native to the

5

State of Alabama.

8.      Venue is proper pursuant to *Alabama Code Section 6-3-7* as significant events resulting in the cause of action and subsequent injuries occurred in this county.

9.      Joinder of all parties is proper pursuant to Rule 20(a) of the *Alabama Rules of Civil Procedure*. Defendants are permissively joined in this action because the exposure, injuries, and relief requested all arise out of similar occurrences or transactions and questions of law and fact are common to all parties.

## PARTIES

10.      Plaintiff James Anthony Zynda  a resident and citizen of Lillian, Alabama. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

11.      Plaintiff James Anthony Zynda was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

12.      Plaintiff Jose L. Lopez  a resident and citizen of Orlando, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

13.      Plaintiff Jose L. Lopez was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

14.      Plaintiff Guadalupe  Lopez IV a resident and citizen of Los Fresnos, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work,

due to contamination on behalf of the defendants, and potential AFFF sources.

15.    Plaintiff Guadalupe  Lopez was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

16.    Plaintiff Dawn  Mako  a resident and citizen of Edison, New Jersey. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

17.    Plaintiff Dawn  Mako was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

18.    Plaintiff Bilal A. Malik  a resident and citizen of Brooklyn, New York. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

19.    Plaintiff Bilal A. Malik was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

20.    Plaintiff George  Marsh III a resident and citizen of Sauquoit, New York. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

21.    Plaintiff George  Marsh was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

22.    Plaintiff Hosie  Mattox Jr a resident and citizen of Fairfield, California. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

23.     Plaintiff Hosie  Mattox was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

24.     Plaintiff Ambrose  McAllister  a resident and citizen of Autryville, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

25.     Plaintiff Ambrose  McAllister was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

26.     Plaintiff Eddie  McCorkle  a resident and citizen of Sylvania, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

27.     Plaintiff Eddie  McCorkle was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

28.     Plaintiff James  McCune  a resident and citizen of Latrobe, Pennsylvania. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

29.     Plaintiff James  McCune was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

30.     Plaintiff Mike  McFarland  a resident and citizen of Holton, Michigan. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

31.    Plaintiff Mike  McFarland was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

32.    Plaintiff Dewey  McKee  a resident and citizen of Bristol, Virginia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

33.    Plaintiff Dewey  McKee was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

34.    Plaintiff Harold  McLeod Jr a resident and citizen of Lehigh Acres, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

35.    Plaintiff Harold  McLeod was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

36.    Plaintiff Delois  Meade  a resident and citizen of Fort Wayne, Indiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

37.    Plaintiff Delois  Meade was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

38.    Plaintiff William  Meadors  a resident and citizen of Spartanburg, South Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place

of work, due to contamination on behalf of the defendants, and potential AFFF sources.

39.     Plaintiff William  Meadors was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

40.      Plaintiff Linda   Mears   a resident and citizen of Crestview, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

41.     Plaintiff Linda   Mears was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

42.      Plaintiff Isaias  Mendoza  a resident and citizen of Santa Ana, California. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

43.      Plaintiff Isaias  Mendoza was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

44.      Plaintiff Robert  Miller  a resident and citizen of Jefferson City, Missouri. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

45.     Plaintiff Robert   Miller was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

46.      Plaintiff Danny  Mills  a resident and citizen of Nashville, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

47.     Plaintiff Danny  Mills was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

48.     Plaintiff Robert  Mincey  a resident and citizen of Athens, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

49.     Plaintiff Robert  Mincey was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

50.     Plaintiff Alfredo  Miranda  a resident and citizen of Highland Lakes, New Jersey. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

51.     Plaintiff Alfredo  Miranda was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

52.     Plaintiff Karime Lourdes Moreno  a resident and citizen of Colorado Springs, Colorado. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

53.     Plaintiff Karime Lourdes Moreno was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

54.     Plaintiff Michael  Muelling  a resident and citizen of Ogden, Utah. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to

11

contamination on behalf of the defendants, and potential AFFF sources.

55.     Plaintiff Michael  Muelling was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

56.      Plaintiff Brock  Mulder  a resident and citizen of Sumas, Washington. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

57.     Plaintiff Brock  Mulder was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

58.      Plaintiff Johnnie   Mullins   a resident and citizen of Olathe, Kansas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

59.     Plaintiff Johnnie  Mullins was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

60.      Plaintiff Ryan  Nader  a resident and citizen of Bristol, Wisconsin. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

61.     Plaintiff Ryan   Nader was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

62.      Plaintiff John  Neff  a resident and citizen of North Las Vegas, Nevada. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

63.    Plaintiff John   Neff was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

64.    Plaintiff Ronald   Nesbit  a resident and citizen of Palm Bay, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

65.    Plaintiff Ronald   Nesbit was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

66.    Plaintiff Ricky   Neveils  a resident and citizen of Live Oak, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

67.    Plaintiff Ricky   Neveils was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

68.    Plaintiff Geneva   Newsome  a resident and citizen of Opelika, Alabama. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

69.    Plaintiff Geneva  Newsome was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

70.    Plaintiff Nikitas   Nicholaides  a resident and citizen of Midland Park, New Jersey. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place

of work, due to contamination on behalf of the defendants, and potential AFFF sources.

71.     Plaintiff Nikitas  Nicholaides was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

72.      Plaintiff David Q Noel  a resident and citizen of Ranger, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

73.     Plaintiff David Q Noel was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

74.      Plaintiff James  Norman  a resident and citizen of Spring, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

75.     Plaintiff James  Norman was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

76.      Plaintiff Mark  Obar  a resident and citizen of Dothan, Alabama. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

77.     Plaintiff Mark   Obar was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

78.      Plaintiff Patrick  O'Hagan  a resident and citizen of Bellingham, Washington. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work,

14

due to contamination on behalf of the defendants, and potential AFFF sources.

79.     Plaintiff Patrick  O'Hagan was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

80.      Plaintiff Travis  Optenberg  a resident and citizen of Fountain, Colorado. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

81.     Plaintiff Travis  Optenberg was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

82.      Plaintiff David  Ozbun  a resident and citizen of Pineville, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

83.     Plaintiff David  Ozbun was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

84.      Plaintiff Filippo  Palumbo  a resident and citizen of Hartsdale, New York. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

85.     Plaintiff Filippo  Palumbo was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

86.      Plaintiff James  Parker  a resident and citizen of Churubusco, Indiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

87.     Plaintiff James  Parker was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

88.      Plaintiff Harlan  Parr  a resident and citizen of Molino, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

89.     Plaintiff Harlan  Parr was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

90.      Plaintiff Paul  Pate  a resident and citizen of Las Vegas, Nevada. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

91.     Plaintiff Paul  Pate was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

92.      Plaintiff Teresa  Perea-Espinosa  a resident and citizen of Rio Rancho, New Mexico. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

93.     Plaintiff Teresa  Perea-Espinosa was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

94.      Plaintiff Robert A. Peterson  a resident and citizen of Alamo, Tennessee. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

95.     Plaintiff Robert A. Peterson was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

96.     Plaintiff Terry  Pickett  a resident and citizen of Ontario, New York. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

97.     Plaintiff Terry  Pickett was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

98.     Plaintiff Robert  Pixley  a resident and citizen of Minneapolis, Minnesota. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

99.     Plaintiff Robert  Pixley was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

100.     Plaintiff Ronald  Poserina  a resident and citizen of Mount Sinai, New York. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

101.     Plaintiff Ronald  Poserina was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

102.     Plaintiff Ray  Price  a resident and citizen of Feasterville Trevose, Pennsylvania. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place

of work, due to contamination on behalf of the defendants, and potential AFFF sources.

103. Plaintiff Ray Price was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

104. Plaintiff George O. Prichett a resident and citizen of Millville, New Jersey. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

105. Plaintiff George O. Prichett was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

106. Plaintiff Daniel Pudil a resident and citizen of Marshall, Minnesota. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

107. Plaintiff Daniel Pudil was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

108. Plaintiff JuLana Ray a resident and citizen of Bluford, Illinois. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

109. Plaintiff JuLana Ray was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

110. Plaintiff Louis R Ray a resident and citizen of Bluford, Illinois. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to

contamination on behalf of the defendants, and potential AFFF sources.

111.    Plaintiff Louis R Ray was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

112.    Plaintiff Tommie  Reese  a resident and citizen of Melbourne, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

113.    Plaintiff Tommie  Reese was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

114.    Plaintiff Jeffery  Reisdorph  a resident and citizen of Seffner, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

115.    Plaintiff Jeffery  Reisdorph was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

116.    Plaintiff Kenneth E Rentschler  a resident and citizen of Aurora, Indiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

117.    Plaintiff Kenneth E Rentschler was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

118.    Plaintiff Bradley  Reynolds  a resident and citizen of Havelock, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work,

due to contamination on behalf of the defendants, and potential AFFF sources.

119.   Plaintiff Bradley  Reynolds was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

120.    Plaintiff James  Richards  a resident and citizen of Yukon, Oklahoma. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

121.   Plaintiff James  Richards was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

122.    Plaintiff Paul  Ridder  a resident and citizen of El Dorado, Kansas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

123.   Plaintiff Paul  Ridder was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

124.    Plaintiff Sergio Tortoriello Rivera   a resident and citizen of Homestead, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

125.   Plaintiff Sergio Tortoriello Rivera was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

126.    Plaintiff Angel  Rivera  a resident and citizen of Medford, New York. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

127.    Plaintiff Angel  Rivera was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

128.    Plaintiff David  Rivera  a resident and citizen of Buffalo, New York. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

129.    Plaintiff David  Rivera was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

130.    Plaintiff Laurie  Roberts  a resident and citizen of Coarsegold, California. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

131.    Plaintiff Laurie  Roberts was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

132.    Plaintiff Richard  Robinette  a resident and citizen of Harlingen, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

133.    Plaintiff Richard  Robinette was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

134.    Plaintiff Tyrone  Robinson  a resident and citizen of Great Falls, Montana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

135.    Plaintiff Tyrone  Robinson was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

136.     Plaintiff Michael  Rojo  a resident and citizen of Clay, New York. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

137.    Plaintiff Michael  Rojo was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

138.     Plaintiff David  Romero  a resident and citizen of Pahrump, Nevada. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

139.    Plaintiff David  Romero was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

140.     Plaintiff Ramon  Rosa  a resident and citizen of Belleview, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

141.    Plaintiff Ramon  Rosa was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

142.     Plaintiff Wesley W. Roseberry  a resident and citizen of Copperas Cove, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work,

due to contamination on behalf of the defendants, and potential AFFF sources.

143.    Plaintiff Wesley W. Roseberry was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

144.    Plaintiff Daniel  Ross  a resident and citizen of Flintville, Tennessee. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

145.    Plaintiff Daniel  Ross was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

146.    Plaintiff Daniel  Rubio  a resident and citizen of Mesa, Arizona. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

147.    Plaintiff Daniel  Rubio was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

148.    Plaintiff Gordon L. Rush  a resident and citizen of Delavan, Illinois. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

149.    Plaintiff Gordon L. Rush was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

150.    Plaintiff David  Sanders  a resident and citizen of Clinton, Mississippi. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

151.    Plaintiff David  Sanders was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

152.    Plaintiff David  Santos  a resident and citizen of Fairhaven, Massachusetts. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

153.    Plaintiff David  Santos was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

154.    Plaintiff Tonya  Scott  a resident and citizen of Hudson, Ohio. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

155.    Plaintiff Tonya  Scott was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

156.    Plaintiff Christine  Sewell  a resident and citizen of Peyton, Colorado. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

157.    Plaintiff Christine  Sewell was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

158.    Plaintiff William  Shapiro  a resident and citizen of Philadelphia, Pennsylvania. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work,

due to contamination on behalf of the defendants, and potential AFFF sources.

159.    Plaintiff William  Shapiro was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

160.     Plaintiff Parker  Shelato  a resident and citizen of Buford, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

161.    Plaintiff Parker  Shelato was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

162.     Plaintiff Ryan Jay Shevlin  a resident and citizen of Honesdale, Pennsylvania. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

163.    Plaintiff Ryan Jay Shevlin was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

164.     Plaintiff Gwendolyn  Simmons  a resident and citizen of Pike Road, Alabama. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

165.    Plaintiff Gwendolyn  Simmons was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

166.     Plaintiff Timothy H. Sinex  a resident and citizen of Willow Street, Pennsylvania. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place

of work, due to contamination on behalf of the defendants, and potential AFFF sources.

167.    Plaintiff Timothy H. Sinex was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

168.    Plaintiff Robert  Singley  a resident and citizen of Blair, Nebraska. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

169.    Plaintiff Robert  Singley was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

170.    Plaintiff David M Sischo  a resident and citizen of Saint Amant, Louisiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

171.    Plaintiff David M Sischo was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

172.    Plaintiff Sharon  Sizer  a resident and citizen of Imlay, Nevada. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

173.    Plaintiff Sharon  Sizer was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

174.    Plaintiff Jerol  Smith  a resident and citizen of Bellflower, California. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

175.    Plaintiff Jerol  Smith was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

176.     Plaintiff Mark Wayne Smith  a resident and citizen of Johnston City, Illinois. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

177.    Plaintiff Mark Wayne Smith was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

178.     Plaintiff Jeffery  Smith  a resident and citizen of Detroit, Michigan. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

179.    Plaintiff Jeffery  Smith was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

180.     Plaintiff Sidney  Smith  a resident and citizen of El Reno, Oklahoma. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

181.    Plaintiff Sidney  Smith was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

182.     Plaintiff Frank Tyrone Smith  a resident and citizen of Baytown, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

183.    Plaintiff Frank Tyrone Smith was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

184.    Plaintiff Felix  Solano  a resident and citizen of San Antonio, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

185.    Plaintiff Felix  Solano was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

186.    Plaintiff John Wayne Spencer  a resident and citizen of Bean Station, Tennessee. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

187.    Plaintiff John Wayne Spencer was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

188.    Plaintiff Edward  Stewart  a resident and citizen of New Bloomfield, Missouri. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

189.    Plaintiff Edward  Stewart was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

190.    Plaintiff Mark Carroll Stewart  a resident and citizen of Gastonia, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place

DOCUMENT 2

Case 2:24-cv-00867-AMM   Document 1-1   Filed 07/01/24   Page 30 of 81

of work, due to contamination on behalf of the defendants, and potential AFFF sources.

191.    Plaintiff Mark Carroll Stewart was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

192.     Plaintiff Garth  Stockard  a resident and citizen of Pensacola, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

193.    Plaintiff Garth  Stockard was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

194.     Plaintiff Patrick Claude Stoffal  a resident and citizen of Filer, Idaho. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

195.    Plaintiff Patrick Claude Stoffal was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

196.     Plaintiff Darleen  Stowell  a resident and citizen of Dover, New Hampshire. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

197.    Plaintiff Darleen  Stowell was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

198.     Plaintiff James  Sullivan  a resident and citizen of Seminole, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

199.    Plaintiff James  Sullivan was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

200.    Plaintiff Kenneth  Swinehart  a resident and citizen of Millsboro, Delaware. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

201.    Plaintiff Kenneth  Swinehart was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

202.    Plaintiff James Edward Taylor  a resident and citizen of Dalton, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

203.    Plaintiff James Edward Taylor was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

204.    Plaintiff Justin  Tennant  a resident and citizen of Silver Springs, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

205.    Plaintiff Justin  Tennant was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

206.    Plaintiff Kyren  Tenneson  a resident and citizen of Phoenix, Arizona. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

207.    Plaintiff Kyren  Tenneson was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

208.    Plaintiff Robert  Thatcher  a resident and citizen of Powell, Ohio. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

209.    Plaintiff Robert  Thatcher was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

210.    Plaintiff James   Thomas   a resident and citizen of Seminole, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

211.    Plaintiff James   Thomas was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

212.    Plaintiff Tandy  Thomas  a resident and citizen of Killeen, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

213.    Plaintiff Tandy   Thomas was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

214.    Plaintiff Hallie   Travis  a resident and citizen of Hammond, Oregon. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

215.    Plaintiff Hallie  Travis was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

216.    Plaintiff Warren  Trawick  a resident and citizen of Waterbury, Connecticut. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

217.    Plaintiff Warren  Trawick was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

218.    Plaintiff Joanne  Tuten  a resident and citizen of Kingston, North Carolina. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

219.    Plaintiff Joanne  Tuten was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

220.    Plaintiff Todd  Van Kleeck  a resident and citizen of Chassell, Michigan. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

221.    Plaintiff Todd  Van Kleeck was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

222.    Plaintiff David  Vincent  a resident and citizen of Clearwater, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

223.    Plaintiff David  Vincent was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

224.     Plaintiff Kenneth  Walker  a resident and citizen of San Jose, California. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

225.    Plaintiff Kenneth  Walker was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

226.     Plaintiff Christopher  Walker  a resident and citizen of Sandoval, Illinois. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

227.    Plaintiff Christopher  Walker was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

228.     Plaintiff Melissa  Ward  a resident and citizen of Gulfport, Mississippi. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

229.    Plaintiff Melissa  Ward was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

230.     Plaintiff Robert  Weaver  a resident and citizen of Jacksonville, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

231.    Plaintiff Robert  Weaver was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

232.     Plaintiff Thomas  Webber  a resident and citizen of Broken Arrow, Oklahoma. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

233.    Plaintiff Thomas  Webber was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

234.     Plaintiff Edith  Weipert  a resident and citizen of Harrington, Delaware. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

235.    Plaintiff Edith  Weipert was diagnosed with thyroid disease as a result of exposure to Defendants' PFAS contamination.

236.     Plaintiff Debra  Welch  a resident and citizen of Gig Harbor, Washington. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

237.    Plaintiff Debra  Welch was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

238.     Plaintiff Stephen J. White  a resident and citizen of Winthrop, Massachusetts. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work,

due to contamination on behalf of the defendants, and potential AFFF sources.

239.    Plaintiff Stephen J. White was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

240.    Plaintiff Taliaferro  Wiatt  a resident and citizen of Trenton, Kentucky. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

241.    Plaintiff Taliaferro  Wiatt was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

242.    Plaintiff Barry  Wiley  a resident and citizen of Los Angeles, California. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

243.    Plaintiff Barry  Wiley was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

244.    Plaintiff Anthony A Williams  a resident and citizen of Fairburn, Georgia. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

245.    Plaintiff Anthony A Williams was diagnosed with liver cancer as a result of exposure to Defendants' PFAS contamination.

246.    Plaintiff Andrew  Wilson  a resident and citizen of Winter Garden, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

247.    Plaintiff Andrew  Wilson was diagnosed with testicular cancer as a result of exposure to Defendants' PFAS contamination.

248.     Plaintiff Eddie  Wimbley  a resident and citizen of Shreveport, Louisiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

249.    Plaintiff Eddie  Wimbley was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

250.     Plaintiff John  Windham  a resident and citizen of Nederland, Texas. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

251.    Plaintiff John  Windham was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

252.     Plaintiff Donald  Wolf  a resident and citizen of Vestaburg, Michigan. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

253.    Plaintiff Donald  Wolf was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

254.     Plaintiff Anthony  Wright  a resident and citizen of Pineville, Louisiana. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due

to contamination on behalf of the defendants, and potential AFFF sources.

255.    Plaintiff Anthony  Wright was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

256.    Plaintiff Robert  Zirkle  a resident and citizen of Mayo, Florida. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

257.    Plaintiff Robert  Zirkle was diagnosed with kidney cancer as a result of exposure to Defendants' PFAS contamination.

258.    Plaintiff Dimitra  Zoupas  a resident and citizen of Maspeth, New York. Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of the defendants, and potential AFFF sources.

259.    Plaintiff Dimitra  Zoupas was diagnosed with thyroid cancer as a result of exposure to Defendants' PFAS contamination.

260.    Defendant, 3M Company, f/k/a Minnesota Mining and Manufacturing Company, ("3M"), is a Delaware corporation and does business throughout the United States. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.

261.    3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or

otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

262.    Defendant AGC Chemicals Americas, Inc. ("AGC") is a Delaware corporation and does business throughout the United States. AGC has its principal place of business at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341.

263.    AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

264.    Defendant Amerex Corporation ("Amerex") is an Alabama corporation and does business throughout the United States. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173.

265.    Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

266.    Defendant Archroma U.S. Inc. ("Archroma") is a North Carolina company and does business throughout the United States. Archroma has its principal place of business at 5435 77 Center Drive, #10 Charlotte, North Carolina 28217. Upon information and belief, Archroma was formed in 2013 as part of the acquisition of Clariant Corporation's Textile Chemicals, Paper Specialties and Emulsions business by SK Capital Partners.

267.    Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

268.    Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation and does business throughout the United States. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont in 2002.

269.    Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which

contained PFAS for use in firefighting.

270.    Defendant BASF Corporation ("BASF") is a Delaware corporation and does business throughout the United States. BASF has its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.

271.    BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

272.    Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation and does business throughout the United States. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

273.    Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

274. Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation and does business throughout the United States. Carrier has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier was formed in 2020 and is the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF.

275. Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

276. Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation and does business throughout the United States. ChemDesign has its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143.

277. ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

278. Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does

business throughout the United States. Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

279.    Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

280.    Defendant Chemicals, Inc. ("Chemicals") is a Texas corporation and does business throughout the United States. Chemicals has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521.

281.    Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

282.    Defendant Chemours Company FC, LLC ("Chemours FC"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899. Chemours FC is a subsidiary of The

Chemours Company.

283.    Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

284.    Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210.  Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

285.    Chubb Fire designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

286.    Defendant Clariant Corporation ("Clariant") is a New York corporation and does business throughout the United States. Clariant has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

287.     Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

288.     Defendant Corteva, Inc. ("Corteva") is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is Chestnut Run Plaza 735, Wilmington, Delaware 19805. Corteva is the successor-in-interest to Dupont Chemical Solutions Enterprise.

289.     Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

290.     Defendant Daikin America, Inc. ("Daikin") is a Delaware corporation and does business throughout the United States. PBI has its principal place of business in Orangeburg, New York.

291.     Daikin designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are

the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

292.     Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation and does business throughout the United States. Deepwater's principal place of business is at 196122 E County Road 735, Woodward, Oklahoma 73801.

293.     Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

294.     Defendant Du Pont de Nemours Inc. (f/k/a DowDuPont, Inc.) ("DowDuPont"), is a Delaware corporation and does business throughout the United States. DowDuPont, has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDupont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers.

295.     DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF

containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

296.   Defendant Dynax Corporation ("Dynax") is a New York corporation that conducts business throughout the United States. Its principal place of business is 103 Fairview Park Drive, Elmsford, New York, 10523-1544.

297.   Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

298.   Defendant E. I. du Pont de Nemours and Company ("DuPont"), is a Delaware corporation and does business throughout the United States. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

299.   DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

300.    Defendant Johnson Controls, Inc. ("Johnson Controls") is a Delaware corporation and does business throughout the United States. PBI has its principal place of business in Milwaukee Wisconsin.

301.    Johnson Controls designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

302.    Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. Kidde P.L.C. has its principal place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

303.    Kidde P.L.C. designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

304.    Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina company and does business throughout the United States. Nation Ford has its principal place of

business at 2300 Banks Street, Fort Mill, South Carolina 29715.

305.    Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

306.    Defendant National Foam, Inc. ("National Foam") is a Delaware corporation and does business throughout the United States. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina, 27501.

307.    National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

308.    Defendant Perimeter Solutions, LP ("Perimeter") is a Delaware corporation and does business throughout the United States. PBI has its principal place of business in Rancho Cucamonga, California.

309.    Perimeter designed, marketed, developed, manufactured, distributed, released, trained

users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

310.    Defendant The Chemours Company ("Chemours"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS related liabilities.

311.    Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

312.    Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco"), is a Delaware limited partnership and does business throughout the United States. Tyco has its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.

313.    Tyco is the successor in interest to the corporation formerly known as The Ansul

Company ("Ansul"). At all times relevant, Tyco/Ansul designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

314.    Defendant United Technologies Corporation ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

315.    United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

316.    Defendant UTC Fire & Security Americas Corporation, Inc.  (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation and does business throughout the United States. UTC has principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

317. UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

318. When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

319. The term "AFFF Defendant" or "AFFF Defendants" refers to all Defendants named herein who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this complaint, jointly and severally, unless otherwise stated.

## **FACTUAL ALLEGATIONS**

320. Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish hydrocarbon fuel-based fires.

321. AFFF-containing fluorinated surfactants have better firefighting capabilities than water due to their surfactant-tension lowering properties which allow the compound(s) to extinguish

fire by smothering, ultimately starving it of oxygen.

322.    AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

323.    AFFF Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled AFFF containing toxic PFAS or underlying PFAS containing chemicals used in AFFF production that were used by entities around the country, including military, county, and municipal firefighting departments.

324.    AFFF Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS, in such a way as to cause the contamination of Plaintiffs' blood and/or body with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Plaintiffs.

325.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and in other parts of the world. It contains PFAS, which are highly fluorinated synthetic chemical compounds whose family include PFOS and PFOA.

326.    PFAS are a family of chemical compounds containing fluorine and carbon atoms.

327.    PFAS have been used for decades in the manufacture of AFFF. The PFAS family of chemicals are entirely human-made and do not naturally occur or otherwise exist.

328.    Prior to commercial development and large-scale manufacture and use of AFFF

containing PFAS, no such PFAS had been found or detected in human blood.

### A.    AFFF / PFAS Hazardous Effects on Humans

329.    AFFF and its components are associated with a wide variety of adverse health effects in humans.

330.    Exposure to AFFF Defendants' products has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, liver cancer, testicular tumors, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease and infertility.

331.    By at least the end of the 1960s, animal toxicity testing performed by some Defendants manufacturing and/or using PFAS indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

332.    By at least the end of the 1960s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that such materials, including at least PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

333.    By at least the end of the 1970s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would remain and persist over long periods of time and would accumulate in the blood/body of

the exposed individuals with each additional exposure.

334.    By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and possible human carcinogen.

335.    It was understood by AFFF Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans, unless the precise mechanism of action by which the tumors were caused was known and would not occur in humans.

336.    By at least the end of the 1980s, scientists had not determined the precise mechanism of action by which any PFAS caused tumors. Therefore, scientific principles of carcinogenesis classification mandated AFFF Defendants presume any such PFAS material that caused tumors in animal studies could present a potential cancer risk to exposed humans.

337.    By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least DuPont, indicated that elevated incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

338.    By at least the end of the 1980s, some Defendants, including at least 3M and DuPont,

understood that, not only did PFAS, including at least PFOA and PFOS, get into and persist and accumulate in the human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life. Meaning that it would take a very long time before even half of the material would start to be eliminated, which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposure continued.

339.    By at least the end of the 1990s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

340.    By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that AFFF Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

341.    By at least 2010, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

342.    When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposure in the

United States and potential associated adverse health effects, AFFF Defendants repeatedly assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

343.    After the USEPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, AFFF Defendants began manufacturing and/or using and/or began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

344.    AFFF Defendants manufacturing and/or using Short-Chain PFAS, including at least DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been found in human blood.

345.    By at least the mid-2010s, AFFF Defendants, including at least DuPont and Chemours, were aware that at least one Short-Chain PFAS had been found to cause the same triad of tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-Short-Chain PFAS.

346.    Research and testing performed by and/or on behalf of AFFF Defendants making and/or using Short-Chain PFAS indicates that such Short-Chain PFAS materials present the same, similar, and/or additional risks to human health as had been found in research on other PFAS materials, including cancer risk.

347.    Nevertheless, AFFF Defendants repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS, including Short-Chain PFAS, in human blood at the levels found within the United States present no risk of harm and

is of no legal, toxicological, or medical significance of any kind.

348.    At all relevant times, AFFF Defendants, individually and/or collectively, possessed the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature that AFFF Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards AFFF Defendants deem acceptable.

349.    Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA, had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, AFFF Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind, and have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate.

350.    At all relevant times, AFFF Defendants shared and/or should have shared among themselves all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological, and/or

other adverse effects and/or risks.

351.    As of the present date, blood serum testing and analysis by AFFF Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically demonstrably present in approximately 99% of the current population of the United States.

352.    There is no naturally-occurring "background," normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants.

353.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiffs from discovering the existence and extent of any injuries/harm as alleged herein.

354.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

355.    At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would

have properly and fully alerted Plaintiffs to the legal, toxicological, medical, or other significance and/or risk from having any PFAS material in Plaintiffs' blood.

356.    At all relevant times, Defendants encouraged the continued and even further increased use of PFAS by their customers and others, including but not limited to the manufacture, use, and release, of AFFF containing PFAS and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

357.    To this day, Defendants deny that the presence of any PFAS in human blood, at anylevel, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

358.    To this day, Defendants deny that any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other significance.

359.    Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

360.    Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale and/or other handling and/or use of AFFF containing PFAS would result in the contamination of the blood and/or body of Plaintiffs with PFAS, and the biopersistence and bioaccumulation of such PFAS in their blood and/or body.

361.    Defendants were and /or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the blood and/or body of Plaintiffs would cause injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Plaintiffs.

362.    Defendants did not seek or obtain permission or consent from Plaintiffs before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Plaintiffs' exposure to AFFF and the contamination of Plaintiffs' blood and/or body with PFAS materials, and resulting biopersistence and bioaccumulation of such PFAS in their blood and/or body.

### B.    Defendants' History of Manufacturing and Selling AFFF

363.    3M began producing PFOS and PFOA by electrochemical fluorination in the 1940s.  In the 1960s, 3M used its fluorination process to develop AFFF.

364.    3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s.

365.    National Foam and Tyco/Ansul began to manufacture, market, and sell AFFF in the 1970s.

366.    Buckeye began to manufacture, market, and sell AFFF in the 2000s.

367.    In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and related products, including AFFF. 3M, in its press release announcing the phase out, stated "our products are safe," and that 3M's decision was "based on [its] principles of responsible environment management."  3M further stated that "the presence of these materials at [] very low levels does not pose a human health or environmental risk."  In communications with the EPA at that time, 3M also stated that it had "concluded that…other business opportunities were more deserving of the company's energies and attention…"

368.    Following 3M's exit from the AFFF market, the remaining AFFF Defendants continued to manufacture and sell AFFF that contained PFAS and/or its precursors.

369.    AFFF Defendants knew their customers warehoused large stockpiles of AFFF. In fact, AFFF Defendants marketed their AFFF products by touting its shelf-life. Even after AFFF Defendants fully understood the toxicity of PFAS, and their impacts to the health of humans following exposure, AFFF Defendants concealed the true nature of PFAS. While AFFF Defendants phased out production or transitioned to other formulas, they did not instruct their customers that they should not use AFFF that contained PFAS and/or their precursors. AFFF Defendants further did not act to get their harmful products off the market.

370.    AFFF Defendants did not warn public entities, firefighter trainees who they knew would foreseeably come into contact with their AFFF products, or firefighters employed by either civilian and/or military employers that use of and/or exposure to AFFF Defendants' products containing PFAS and/or its precursors would pose a danger to human health.

371.    The Plaintiffs were exposed to PFAS contamination, directly through contaminated drinking water.

372.   The Plaintiffs were never informed that the water was dangerous. Nor were the Plaintiffs warned about the known health risks associated with Defendants' PFAS chemicals.

373.   The Plaintiffs never received instruction to avoid drinking the water.

374.   Defendants have known of the health hazards associated with PFAS and/or its compounds for decades and that in their intended and/or common use would harm human health.

375.   Information regarding PFAS and its compounds were readily accessible to the Defendants for decades because each is an expert in the field of PFAS manufacturing and/or the materials needed to manufacture PFAS, and each has detailed information and understanding about the chemical compounds that form PFAS products.

376.   Defendants' manufacture, storage, and release of PFAS resulted in the Plaintiffs and other individuals who came in contact with the chemicals to develop cancer.

377.   The Defendants, through their manufacturing, storing, and inappropriate releases of PFAS, knew, foresaw, and/or should have known and/or foreseen that the Plaintiffs and those similarly situated would be harmed.

378.   The Defendants' products were unreasonably dangerous, and the Defendants failed to warn of this danger.

## CAUSES OF ACTION

## COUNT I - NEGLIGENCE

379.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

380.   Negligence may exist both as an omission as well as an affirmative act. A claim of

negligence allows for the recovery for an injury that was proximately caused by another's violation of a duty of reasonable care.

381.     Here, the Defendants, as owners and operators of business(es) at sites that managed, stored, used and disposed of toxic contaminants and solvents, owed Plaintiffs a cognizable duty to exercise reasonable care in the storage, transportation, and disposal of toxic chemicals including but not limited to the Contaminants, and in the maintenance of their tools and equipment used for such acts.

382.     Defendants breached their duty of reasonable care which a reasonably prudent person should use under the circumstances by causing and/or allowing and/or failing to prevent the releases of PFAS chemical into the water in and around the sites and the surrounding neighborhoods, where they caused toxic exposure to Plaintiffs and the contamination of their homes.

383.     The releases of PFAS and PFAS byproducts into groundwater and drinking water is the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and wellbeing and to their properties and the adjacent properties.

384.     Defendants breached that duty by failing to timely notify the Plaintiffs of the releases of PFAS.

385.     As a direct and proximate result of Defendants' negligence, the Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

386.     Defendants breached their duty by failing to act reasonably to remediate, contain, and eliminate the contamination before it injured the Plaintiffs.

387.    Defendants had a legal duty to properly remediate the contamination from their activities at the sites and had full knowledge of the extent of the contamination and the threat it poses to human health and safety.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II – BATTERY

388.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

389.    At all relevant times, Defendants possessed knowledge that the PFAS which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio- persistent, bio-accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiffs having PFAS in Plaintiffs' blood, and the biopersistence and bioaccumulation of such PFAS in Plaintiffs' blood.

390.    However, despite possessing such knowledge, Defendants  knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiffs accumulating PFAS in Plaintiffs' blood and/or body, and such PFAS persisting and accumulating in Plaintiffs' blood and/or body.

391.    Defendants did not seek or obtain permission or consent from Plaintiffs to put or allow PFAS materials into Plaintiffs' blood and/or body, or to persist in and/or accumulate in

Plaintiffs' blood and/or body.

392.    Entry into, persistence in, and accumulation of such PFAS in Plaintiffs' body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiffs' person and unreasonably interferes with Plaintiffs' rightful use and possession of Plaintiffs' blood and/or body.

393.    At all relevant times, the PFAS present in the blood of Plaintiffs originated from Defendants' acts and/or omissions.

394.    Defendants continues to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiffs that resulted in persisting and accumulating levels of PFAS in Plaintiffs' blood.

395.    Plaintiffs, and any reasonable person, would find the contact at issue harmful and/or offensive.

396.    Defendants acted intentionally with the knowledge and/or belief that the contact, presence and/or invasion of PFAS with, onto and/or into Plaintiffs' blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

397.    Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiffs' blood and/or body.

398.    The continued presence, persistence, and accumulation of PFAS in the blood and/or body of Plaintiffs is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

399.    The presence of PFAS in the blood and/or body of Plaintiffs altered the structure and/or function of such blood and/or body parts and resulted in cancer.

400.    As a direct and proximate result of the foregoing acts and omissions, Plaintiffs suffered

physical injury for which Defendants are therefore liable.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT III – ABNORMALLY DANGEROUS ACTIVITY

401.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

402.    Activities such as the disposal of hazardous chemical wastes as is the case herein constitutes an abnormally dangerous activity for which strict liability will apply.

403.    Defendants' aforesaid failure to employ reasonable care which a reasonably prudent person should use under the circumstances by storing, transporting, disposing of, or otherwise handling toxic substances, including PFAS, constitutes ultra-hazardous and abnormally dangerous activities involving ultra-hazardous, abnormally dangerous substances.

404.    Defendants allowed or caused these ultra-hazardous and abnormally dangerous substances to be released into the surrounding land, groundwater, and river, and in doing so, failed to warn Plaintiffs of the dangerous condition that was caused thereby.

405.    The risks posed by such activities outweigh any value associated with the same. As the result of said ultra-hazardous and abnormally dangerous activities, Plaintiffs have suffered damages and imminent, substantial, and impending harm to their health, families, and home values. Plaintiffs have expended and will be forced to expend significant resources to address their injuries caused by the contamination indefinitely for years and decades into the future.

406.     By reason of the foregoing, Defendants are strictly liable in tort for the damages sustained by Plaintiffs.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IV – FRAUDULENT CONCEALMENT

407.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

408.     Throughout the relevant time period, Defendants knew that PFAS was defective and unreasonably unsafe for their intended purpose.

409.     Defendants fraudulently concealed from and/or failed to disclose to or warn the Plaintiffs, and the public that PFAS was defective, unsafe, and unfit for the purposes intended.

410.     Defendants were under a duty to the Plaintiffs and the public to disclose and warn of the defective and harmful nature of PFAS because:

   a) Defendants were in a superior position to know the true quality, safety and efficacy of the Defendants' products;

   b) Defendants knowingly made false claims about the safety and quality of the Defendants' product in documents and marketing materials; and

   c) Defendants fraudulently and affirmatively concealed the defective nature of the Defendants' products from the Plaintiffs.

411.     The facts concealed and/or not disclosed by Defendants to the Plaintiffs were material facts that a reasonable person would have considered to be important.

412.    Defendants intentionally concealed and/or failed to disclose the true defective nature of PFAS so that the Plaintiffs would use the Defendants' products, the Plaintiffs justifiably acted or relied upon, to Plaintiffs' detriment, the concealed and/or non-disclosed facts.

413.    Defendants, by concealment or other action, intentionally prevented the Plaintiffs from acquiring material information regarding the lack of safety and effectiveness of PFAS and are subject to the same liability to the Plaintiffs for Plaintiffs' pecuniary losses, as though Defendants had stated the non-existence of such material information regarding PFAS's lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non- existence of such matters that the Plaintiffs was thus prevented from discovering the truth.

414.    Defendants therefore have liability for fraudulent concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

415.    As a proximate result of Defendants' conduct, the Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## <u>COUNT V – NUISANCE</u>

416.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

417.     Under a cause of action for private nuisance, Parties may be subject to liability for environmental contamination if their conduct invades another's private use and enjoyment of land and if such invasion is: 1) intentional and unreasonable; 2) negligent or reckless; or 3) actionable under the rules governing liability for abnormally dangerous conditions or activities.

418.     Defendants own, occupy, control and/or still own, occupy and control their real property in such a way as to create and/or maintain and continue a dangerous and/or hazardous condition.

419.     At all times mentioned herein, Defendants had knowledge and/or notice of the dangerous condition that the PFAS presented and failed to take reasonable acts to cleanup, correct, or remediate that condition.

420.     Additionally, Defendants owed a duty to Plaintiffs to take reasonable action to eliminate, correct, or remedy any dangerous that was reasonably foreseeable to injure Plaintiffs and of which they had knowledge and/or notice.

421.     Defendants breached these duties by negligently, willfully, and/or wantonly creating a dangerous condition on their property by allowing massive quantities toxic PFAS to be spilled, disposed of, or otherwise released into the ground, soil, and groundwater. This dangerous condition is reasonably foreseeable to cause injury and damage to Plaintiffs due to the size and nature of the releases of the contaminants.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VI – WANTONNESS

422.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

423.     Defendants and their employees, agents, officers, and representatives owed a duty of care to everyone in the surrounding communities, including Plaintiffs.

424.     Defendants breached the duty of care owed to the Plaintiffs.

425.     The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of those exposed to Defendants' PFAS, including Plaintiffs.

426.     As a proximate and foreseeable consequent of the actions of Defendants, Plaintiffs were exposed to unreasonably dangerous toxic PFAS, which caused Plaintiffs' injuries.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VII – STRICT LIABILITY (STATUTORY)

427.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

428.     Plaintiffs asserts any and all remedies available under statutory causes of action from Plaintiffs' states for strict liability against each Defendant.

429.     The Defendants were engaged in designing, manufacturing, marketing, selling, and distribution of PFAS products.

430.    The PFAS products were in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by the Defendants.

431.    As a direct and proximate result of the Defendants products' aforementioned defects, the Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

432.    The Defendants are strictly liable in tort to the Plaintiffs for their wrongful conduct.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VIII – STRICT LIABILITY (RESTATEMENT)

433.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

434.    The Plaintiffs bring strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

435.    As designed, manufactured, marketed, tested, assembled, equipped, distributed and/or sold by the Defendants the PFAS product was in a defective and unreasonably dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including the Plaintiffs.

436.    The Defendants had available reasonable alternative designs which would have made

the PFAS product safer and would have most likely prevented the injuries and damages to the Plaintiffs, thus violating state law and the Restatement of Torts.

437.    The Defendants failed to properly and adequately warn and instruct the Plaintiffs as to the proper safety and use of the Defendants' product.

438.    The Defendants failed to properly and adequately warn and instruct the Plaintiffs regarding the inadequate research and testing of the product.

439.    The Defendants' products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

440.    As a proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the products, the Plaintiffs have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

441.    By reason of the foregoing, the Defendants are strictly liable for the injuries and damages suffered by the Plaintiffs, caused by these defects in the PFAS products.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IX – INADEQUATE WARNING

442.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

443.    Defendants knew or should have known:

a) exposure to products containing PFAS was hazardous to human health;

b) the manner in which they were designing, marketing, developing, manufacturing, distributing, releasing, training, instructing, promoting, and selling products containing PFAS was hazardous to human health; and

c) the manner in which they were designing, marketing, developing, manufacturing, marketing, distributing, releasing, training, instructing, promotion and selling products containing PFAS would result in the contamination of Plaintiffs' blood and/or body as a result of exposure.

444.    Defendants had a duty to warn of the hazards associated with products containing PFAS entering the blood and/or body of Plaintiffs because they knew of the dangerous, hazardous, and toxic properties of products containing PFAS. Defendants failed to provide sufficient warning to purchasers that the use of their PFAS products would cause PFAS to be released and cause the exposure and bioaccumulation of these toxic chemicals in the blood and/or body of Plaintiffs.

445.    Adequate instructions and warnings on the products containing PFAS could have reduced or avoided these foreseeable risks of harm and injury to Plaintiffs. If Defendants provided adequate warnings:

a) Plaintiffs could have and would have taken measures to avoid or lessen exposure; and

b) end users and governments could have taken steps to reduce or prevent the release of PFASs into the blood and/or body of Plaintiffs. Defendants' failure to warn was a direct and proximate cause of Plaintiffs' injuries from PFAS that came from the use, storage, and disposal of products containing PFAS. Crucially, Defendants' failure to provide adequate and sufficient warnings for the products containing PFAS they designed, marketed, manufactured, distributed, released, promoted, and sold renders the PFAS products as defective products.

446.    Defendants were negligent in their failure to provide Plaintiffs with adequate warnings or instruction that the use of their PFAS products would cause PFAS to be released into the blood and/or body of Plaintiffs. As a result of Defendants' conduct and the resulting

contamination, Plaintiffs suffered severe personal injuries by exposure to products containing PFAS.

447.    Defendants' negligent failure to warn directly and proximately caused the harm to and damages suffered by Plaintiffs.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## TOLLING OF THE STATUTE OF LIMITATIONS
### Discovery Rule Tolling

448.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of and exposure to PFAS until very recently.

449.    Within the time period of any applicable statute of limitations, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to PFAS is harmful to human health.

450.    Plaintiffs did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to PFAS; nor would a reasonable and diligent investigation by Plaintiffs have disclosed that PFAS could cause personal injury.

451.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

### Fraudulent Concealment Tolling

452.    All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

453.    Instead of disclosing critical safety information regarding PFAS, Defendants have consistently and falsely represented the safety of PFAS and PFAS containing products.

454.    This fraudulent concealment continues through present day.

455.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

### Estoppel

456.    Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Plaintiffs, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to PFAS.

457.    Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning PFAS and the serious risks associated with the use of and exposure to PFAS.

458.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgments against all Defendants, jointly and severally, on each of the above-referenced claims and Causes of Action as follows:

Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited, to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

Punitive and/or exemplary damages for the wanton, willful, fraudulent, and/or reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the Plaintiffs and of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

Awarding Plaintiffs' attorneys' fees;

Awarding Plaintiffs the costs of these proceedings; and

Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

The Plaintiffs hereby demand a trial by jury.

Respectfully Submitted,

**ENVIRONMENTAL LITIGATION GROUP, P.C.**
*/s/ Gregory A. Cade*
Gregory A. Cade
Gary A. Anderson
Kevin B. McKie
ENVIRONMENTAL LITIGATION GROUP, P.C.
2160 Highland Avenue South
Birmingham, AL 35205
Telephone: 205-328-9200
Facsimile: 205-328-9456

**SERVE THE DEFENDANTS AT THE FOLLOWING ADDRESSES BY CERTIFIED MAIL:**

3M COMPANY
c/o Corporation Service Company

251 Little Falls Drive
Wilmington, New Castle, DE 19808

AGC CHEMICALS AMERICAS INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

AMEREX CORPORATION
c/o James M. Proctor II
2900 Highway 280
Suite 300
Birmingham, AL 35223

ARCHROMA U.S. INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

ARKEMA INC.
900 First Avenue
King of Prussia, PA 19406

BASF CORPORATION
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

BUCKEYE FIRE EQUIPMENT COMPANY
c/o A Haon Corporate Agent, Inc.
29225 Chagrin Blvd, Suite 350
Pepper Pike, OH 44122

CARRIER GLOBAL CORPORATION
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

CHEMDESIGN PRODUCTS INC.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, New Castle, DE 19808

CHEMGUARD INC.
c/o The Prentice-Hall Corporation System, Inc.
251 Little Falls Drive
Wilmington, New Castle, DE 19808

CHEMICALS, INC.
c/o Ashok K. Moza
12321 Hatcherville
Baytown, TX 77520

CHEMOURS COMPANY FC, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

CHUBB FIRE, LTD
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

CLARIANT CORPORATION
c/o Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison, WI 53717

CORTEVA, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DAIKIN AMERICA, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DEEPWATER CHEMICALS, INC.
Corporation Trust Center
1209 Orange Street

Wilmington, DE 19801

DUPONT DE NEMOURS, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DYNAX CORPORATION
c/o Corporate Systems LLC
3500 S. Dupont Highway
Dover, DE 19901

E.I. DUPONT DE NEMOURS AND COMPANY
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

JOHNSON CONTROLS, INC.
c/o Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

KIDDE P.L.C.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

NATION FORD CHEMICAL COMPANY
c/o John A. Dickson, IV
2300 Bank Street
Fort Mill, SC 29715

NATIONAL FOAM, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

PERIMETER SOLUTIONS, LP
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street

Wilmington, DE 19801

THE CHEMOURS COMPANY
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

TYCO FIRE PRODUCTS LP
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

UNITED TECHNOLOGIES CORPORATION
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

UTC FIRE & SECURITY AMERICANS CORPORATION, INC.
c/o Registered Office
15720 Brixham Hill Ave #300
Charlotte, NC 28277